2022 IL App (1st) 200593-U

No. 1-20-0593

Fourth Division
May 12, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | |
|---|---|
| 3RED GROUP OF ILLINOIS, LLC, and IGOR B. OYSTACHER, | ) ) ) |
| | ) Appeal from the Circuit Court |
| Plaintiffs, | ) of Cook County. |
| | ) |
| v. | ) No. 2014 CH 19726 |
| | ) |
| EDWIN JOHNSON, | ) The Honorable |
| | ) Patrick J. Sherlock, |
| Defendant and Third-Party Plaintiff-Appellant | ) Judge Presiding. |
| | ) |
| (Jefferey O. Katz and The Patterson Law Firm, LLC, | ) |
| Third-Party Defendants-Appellees). | ) |
| | ) |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Martin concurred in the judgment.

**ORDER**

¶ 1     *Held:*  The circuit court's judgment is affirmed, where the court properly dismissed each count of the amended third-party complaint and did not abuse its discretion in denying the third-party plaintiff's motion to disqualify counsel for the third-party defendant.

¶ 2     Plaintiffs 3Red Group of Illinois, LLC (3Red), and Igor B. Oystacher (Oystacher)

(collectively, plaintiffs) filed suit against defendant Edwin Johnson (Johnson) in the circuit

court of Cook County, alleging that Johnson breached a settlement agreement by, *inter alia*, disclosing confidential information. In turn, Johnson filed a third-party complaint against third-party defendants attorney Jefferey O. Katz (Katz) and The Patterson Law Firm, LLC (collectively, the Patterson parties), alleging that the Patterson parties, not Johnson personally, were responsible for any impermissible disclosures of confidential information.

¶ 3 The Patterson parties retained a law firm to represent them in the third-party action. Johnson, however, filed a motion to disqualify counsel from representing the Patterson parties, claiming that Johnson had previously sought to retain the firm in a related matter. The motion was denied, and the Patterson parties subsequently filed a motion to dismiss Johnson's third-party complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)). The circuit court granted the motion to dismiss, and Johnson now appeals both the order dismissing his third-party complaint and the order denying his motion to disqualify the Patterson parties' counsel.[1] For the reasons set forth below, we affirm.

¶ 4 BACKGROUND

¶ 5 According to plaintiffs' complaint, Johnson was a manager, chief operating officer, compliance officer, and risk officer of 3Red, a proprietary trading firm which was founded by Oystacher. On June 17, 2013, 3Red terminated Johnson's employment, claiming he misrepresented his capital contribution to the company, withdrew cash from the company for personal use, improperly used company funds for personal travel, and submitted a fraudulent operating agreement containing provisions to which Oystacher had never agreed. On August 15, 2013, plaintiffs and Johnson entered into a "Confidential Settlement Agreement and

---

[1] Johnson originally filed a notice of appeal in the underlying action, as well (appeal No. 1-20-0035), which we consolidated with the instant appeal. However, on December 16, 2021, we severed the two appeals and granted Johnson's motion to dismiss appeal No. 1-20-0035.

Reciprocal Release" (settlement agreement) in order to resolve all disputes regarding Johnson's termination. The settlement agreement included provisions imposing certain confidentiality, nondisclosure, and nondisparagement obligations on plaintiffs and Johnson.

¶ 6                                   *Underlying Litigation*

¶ 7          In connection with the termination of his employment, on June 27, 2014, Johnson filed a complaint for legal malpractice against the law firm of Gardiner Koch Weisberg and Wrona, the law firm representing 3Red prior to and at the time of the termination (the Koch litigation). As part of the Koch litigation, Johnson sought a protective order concerning information that was deemed confidential pursuant to the settlement agreement. However, in response to a motion to dismiss, Johnson attached a copy of the settlement agreement as an exhibit without filing it under seal. Johnson at the time was represented by the Patterson parties, but subsequently retained different counsel.[2]

¶ 8          On December 10, 2014, plaintiffs filed a complaint against Johnson, alleging that Johnson had breached the settlement agreement. Specifically, plaintiffs alleged that Johnson (1) disclosed confidential information, (2) failed to return company documents, and (3) failed to provide written notice to plaintiffs regarding his receipt of any governmental or regulatory requests for information about 3Red. With respect to the allegations concerning disclosure of confidential information, plaintiffs alleged that Johnson violated the settlement agreement (1) by disclosing confidential information about 3Red's business, including filing a copy of the settlement agreement as an exhibit, in the Koch litigation and (2) by speaking with the press.

---

[2] While the Patterson parties represented Johnson for a period of time in the Koch litigation, they did not represent Johnson at any time with respect to the instant litigation.

¶ 9    On the same day, plaintiffs also filed a motion for a temporary restraining order and a protective order. On December 15, 2014, the circuit court entered a temporary restraining order, as well as an agreed protective order enjoining Johnson from disclosing any of plaintiffs' confidential information in public litigation filings or to the press. The protective order further required that the confidential documents filed in the Koch litigation be sealed. The court also entered an order transferring the case to the law division, finding that it was related to the Koch litigation. On May 27, 2015, the circuit court entered an order consolidating the Koch litigation and the instant litigation for discovery purposes.

¶ 10    The parties proceeded to engage in discovery, in which Johnson admitted that his attorneys in the Koch litigation inadvertently filed a pleading which contained the settlement agreement as an exhibit, but claimed that he had no knowledge of their actions at the time. However, Johnson's compliance with other discovery requests was the subject of extensive litigation, including an appeal before this court in *3Red Group of Illinois, LLC v. Johnson*, 2019 IL App (1st) 171104-U. As we explained in our prior decision, over the course of the litigation, five motions for sanctions were granted, including one for attorney fees in the amount of $500 and another in the amount of $12,462, both due to Johnson's noncompliance with the circuit court's discovery orders. By contrast, each of Johnson's motions to block plaintiffs' discovery requests was denied. A detailed recitation of the basis for each of plaintiffs' motions for sanctions is included in our prior decision, but many involved Johnson's disclosure of his communications with members of the press. See *3Red Group*, 2019 IL App (1st) 171104-U, ¶¶ 7-31.

¶ 11    As is relevant to the instant appeal, on December 21, 2015, plaintiffs filed a petition for rule to show cause why Johnson should not be held in indirect civil contempt and a sixth motion for sanctions. After an evidentiary hearing, the circuit court entered a written order on May 6,

2016, granting plaintiffs' motion for sanctions but declining to find Johnson in contempt of court. In awarding sanctions, the court found that the entry of a severe sanction could not take Johnson by surprise, as he repeatedly violated the court's discovery orders, despite prior sanctions and a clear warning from the court to cease his misconduct. The court noted that it had progressively increased the sanctions against Johnson, first requiring him to supplement his responses, then giving him more time to accurately answer, and entering monetary sanctions against him when he failed to comply. When Johnson again failed to comply, the court again entered monetary sanctions. The court found that "[e]ach prior sanction entered by this Court was designed to compel cooperation, rather than dispose of the litigation," but that Johnson failed to completely and truthfully answer plaintiffs' discovery requests. The court found that Johnson's failure to comply had caused extreme prejudice to plaintiffs, and demonstrated "egregious and contumacious disregard for this Court's authority." Consequently, as a sanction, the court barred Johnson "from introducing any and all evidence denying his disclosure of confidential information about Plaintiffs and the Confidential Settlement Agreement to the press, in lawsuits, or to any third party unless such disclosure was required by process of law."

¶ 12    On May 20, 2016, Johnson filed an answer to plaintiffs' complaint, which did not contain any affirmative defenses. Johnson subsequently filed a motion for leave to file a third-party complaint against the Patterson parties, which the circuit court granted.

¶ 13                                    *Third-Party Complaint*

¶ 14    Johnson's third-party complaint, filed on July 20, 2016, set forth five counts. Counts I and II were for indemnity and contribution, respectively, and alleged that any wrongful conduct should be attributed to the Patterson parties, not to Johnson personally. Count III was for legal

5

malpractice and alleged that the Patterson parties' conduct constituted negligence causing Johnson harm. Counts IV and V were directed solely at Katz, and were for fraud and defamation, respectively, concerning statements that Katz had allegedly made to and about Johnson. Specifically, count IV alleged that, in 2014, Johnson was contemplating litigation against a different company, Advantage Futures, LLC (Advantage), for which the Patterson parties drafted a complaint. Katz sent a copy of the draft complaint to Advantage, but when Johnson asked how Advantage had obtained the draft complaint, Katz told Johnson that his computer had been "hacked," a statement which Johnson subsequently repeated to governmental authorities. Additionally, count V alleged that, on December 11 and 12, 2014, Katz sent multiple e-mails to a journalist informing him that the Patterson parties had terminated their representation of Johnson as Johnson had not paid his legal bills, which was false.

¶ 15        After the filing of the third-party complaint, plaintiffs filed a motion for summary judgment on all counts of their complaint. During the pendency of the summary judgment proceedings, the law firm of Konicek and Dillon, P.C. (Konicek firm) filed an appearance on behalf of the Patterson parties.

¶ 16                                     *Motion to Disqualify*

¶ 17        On October 14, 2016, Johnson filed a motion to disqualify the Konicek firm, claiming that rule 1.9 of the Illinois Rules of Professional Conduct barred the Konicek firm from representing the Patterson parties in the instant litigation. Johnson claimed that after his termination from 3Red, in early 2014, he consulted with a number of attorneys in anticipation of filing what would become the Koch litigation. One of these attorneys was Daniel Konicek (Konicek) of the Konicek firm, who Johnson met with in March 2014. At that meeting, Johnson

"gave a detailed explanation of the facts and circumstances surrounding his termination, including but not limited to the reasons for his termination from 3Red, Oystacher's improper trading practices, and the actions of Koch." A few days later, Konicek sent Johnson a letter agreeing to represent Johnson, but requiring a $15,000 retainer. Johnson asked for a slight modification of the terms of the retainer, with the retainer being due 45 days from the initiation of representation, instead of immediately. After considering the counterproposal, Konicek informed Johnson that the Konicek firm would not be able to represent Johnson. He ultimately retained the Patterson parties to represent him in the Koch litigation.

¶ 18    Johnson claimed that, at the time he filed his motion for leave to file the third-party complaint, his counsel sent a courtesy copy of the motion to the Konicek firm, which had represented the Patterson parties in relation to a third-party subpoena that had been issued in the underlying case. Johnson's counsel advised the Konicek firm that Johnson had previously consulted with the firm with respect to the Koch litigation, and that counsel believed a conflict would exist if the Konicek firm took a position adverse to Johnson with respect to the instant litigation. Nevertheless, the Konicek firm filed an appearance on behalf of the Patterson parties.

¶ 19    Johnson claimed that his consultation with Konicek gave rise to an attorney-client relationship and that the Koch litigation and the instant litigation arose from the same set of facts and circumstances, including Johnson's termination from 3Red, pointing to the fact that the two cases were consolidated for purposes of discovery. Consequently, Johnson claimed that it would violate the Illinois Rules of Professional Conduct for the Konicek firm to take a position adverse to Johnson in the instant litigation and sought an order disqualifying the firm from representing the Patterson parties with respect to the third-party complaint.

¶ 20        In response, the Patterson parties claimed that Johnson had forfeited any objection to the Konicek firm's representation, as Johnson had been aware of the representation for over a year prior to filing the motion to disqualify. Additionally, the Patterson parties contended that disqualification was unnecessary, since the Koch litigation was not substantially related to the claims contained in the third-party complaint. Finally, the Patterson parties claimed that there was no evidence that Johnson shared confidential information with Konicek during their consultation.

¶ 21        On January 27, 2017, the circuit court entered two orders, one granting plaintiffs' motion for summary judgment on the underlying complaint,[3] and one denying Johnson's motion to disqualify the Konicek firm from representing the Patterson parties in the third-party litigation. With respect to the motion to disqualify, the circuit court found that the third-party litigation and the Koch litigation were not substantially related. The court noted that the underlying litigation and the Koch litigation were consolidated "for ease of discovery purposes," not based on their commonality of facts. The court further noted that claims in the Koch litigation arose from Johnson's allegedly wrongful termination and the Koch firm's involvement in it, while the claims in the third-party complaint arose from the Patterson parties' alleged publication of a confidential agreement. The court found that, even if Johnson had provided confidential information to the Konicek firm, none of it would relate to the actions alleged in the third-party

---

[3] We affirmed the grant of summary judgment in our prior decision. See *3Red*, 2019 IL App (1st) 171104-U. Johnson later filed two petitions to vacate the summary judgment order pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2016)), and the denial of the petitions served as the basis for appeal Nos. 1-18-0940 and 1-20-0035. Appeal No. 1-18-0940 was dismissed for want of prosecution in 2018, and appeal No. 1-20-0035 was previously consolidated with the instant appeal. However, as noted, we granted Johnson's motion to dismiss appeal No. 1-20-0035 and the section 2-1401 petition is not at issue in the instant appeal.

complaint. Consequently, the court found that the two cases were not substantially similar such that disqualification was required.

¶ 22    Additionally, the circuit court found that disqualification was not appropriate due to Johnson's delay in filing the motion. The court noted that Johnson's own brief acknowledged that he was aware that the Konicek firm was representing the Patterson parties as early as December 2015, when he issued a subpoena. The court further noted that there were also several e-mails discussing settlement, which served as evidence that the Konicek firm "was openly representing" the Patterson parties throughout the litigation. Accordingly, the court found that, since the potential conflict was not a secret, Johnson's delay in filing the motion resulted in a waiver of any conflict.

¶ 23                    *Motion to Dismiss Third-Party Complaint*

¶ 24    On March 7, 2017, the Patterson parties filed a motion to dismiss the third-party complaint pursuant to section 2-619 of the Code, claiming (1) Johnson could not establish that the Patterson parties proximately caused his damages, as the damages were a direct result of Johnson's own conduct during the litigation; (2) Johnson's fraud and defamation claims were barred by the attorney litigation privilege and were duplicative of the legal malpractice counts; and (3) Johnson's defamation claim was barred by the statute of limitations.

¶ 25    On July 11, 2017, the circuit court entered an order granting the motion to dismiss. The court found that, "[s]tripped down to the basics," the third-party complaint "attempts to plead a straight forward case for professional malpractice," and dismissed the complaint with leave to replead certain counts. The court explained that the essence of its reasoning was focused on causation and damages and found that "there is no conjecture that Johnson's actions were the cause of some of his injuries." The court found that Johnson's conduct in failing to comply

with discovery requests precluded any argument that the Patterson parties' actions caused his injury. The court further found that, at the time the Patterson parties withdrew their representation, Johnson's actions were not foreseeable, and that absent his conduct, the outcome could have been very different. Nevertheless, the court found that "Johnson may have an argument that absent the negligence of Katz he would have never been dragged into litigation in the first place." The court, however, ultimately found that Johnson's behavior in discovery matters was an intervening cause breaking the chain of causation. The court then proceeded to discuss each count of the third-party complaint specifically.

¶ 26     With respect to counts I and II of the third-party complaint (for indemnity and contribution, respectively), the court found that neither cause of action was available to Johnson, as the discovery sanction foreclosed him from asserting liability by a third party, which proved fatal in the underlying action. The court found that liability could never be established on the underlying complaint and, therefore, Johnson was unable to plead a necessary element for both indemnity and contribution.

¶ 27     With respect to count III, for legal malpractice, the court found that, due to the sanction barring viable defenses available to Johnson, he was unable to establish proximate cause. The court, however, found that Johnson had sufficiently pled actual damages, "if only as it relates to attorneys' fees expended in defense of the underlying complaint (up to a point)." The court explained that Johnson had alleged that, but for the Patterson parties' conduct in disclosing the settlement agreement, Johnson would not have been haled into court for violation of the agreement. Consequently, the court found that damages would be limited to those damages incurred for attorney fees as a result of having to defend the underlying action. Accordingly, the court instructed that "[t]his count may be amended to concisely reflect allegations that but

for third party defendants' actions, Johnson would not have had to defend in the underlying case incurring damages limited to defense costs only."

¶ 28    With respect to count IV, for fraud, the court found that the complaint had "a slight potential" to state a claim for fraud, but needed to be better organized and more concise. While recognizing that the Patterson parties had not requested dismissal based on section 2-615 of the Code (735 ILCS 5/2-615 (West 2016)), the court *sua sponte* dismissed count IV with leave to replead "in an effort to clean up a muddled complaint replete with accusations."

¶ 29    Finally, with respect to count V, for defamation, the court found that, as with count IV, Johnson had "potentially" stated a cause of action but that his complaint needed to be more concise.

¶ 30    While it dismissed counts IV and V under section 2-615 of the Code, the court nevertheless also addressed the Patterson parties' arguments regarding dismissal of these counts under section 2-619. The court found the Patterson parties' claim that the attorney litigation privilege applied to be unpersuasive, since the alleged fraudulent and defamatory statements were unrelated to the litigation. Additionally, the court found there was a question of fact as to the statute of limitations on the defamation claim, based on the question of when Johnson knew or should have known of the alleged defamatory statements. Finally, the court agreed that the fraud and defamation counts "as currently constituted" were duplicative of the legal malpractice count, but granted Johnson leave to replead.

¶ 31    In summary, the court (1) dismissed counts I and II with prejudice pursuant to section 2-619 of the Code and (2) dismissed counts III, IV, and V "with leave to replead."

¶ 32                                    *Motion to Reconsider*

¶ 33        On August 8, 2017, Johnson filed a motion to reconsider the dismissal of counts I and II of

the third-party complaint, claiming that he was in the process of appealing the discovery

sanctions that formed the basis of the circuit court's grant of summary judgment in the

underlying litigation. Therefore, Johnson contended that relying on the sanction to find that he

was unable to state a cause of action for either contribution or indemnity was inappropriate or,

at best, premature.

¶ 34        On December 5, 2017, the circuit court entered an order granting Johnson's motion to

reconsider in part, striking the words "with prejudice" in relation to counts I and II.

¶ 35              *Amended Third-Party Complaint and Motion to Dismiss*

¶ 36        On January 9, 2018, Johnson filed an amended third-party complaint against the Patterson

parties. As with the original third-party complaint, Johnson raised five counts: (1) indemnity,

(2) contribution, (3) legal malpractice, (4) fraud, and (5) defamation.

¶ 37        The Patterson parties again filed a motion to dismiss the amended third-party complaint

based on section 2-619 of the Code. The Patterson parties claimed that the amended complaint

did not cure the defects in the original third-party complaint and that the amended complaint

again failed to adequately plead that the Patterson parties proximately caused Johnson's

damages, requiring the dismissal of counts I through IV with prejudice. Furthermore, the

Patterson parties raised several additional bases for dismissal: (1) count I should be dismissed

as there was no indemnity agreement, either express or implied; (2) count II should be

dismissed as the contribution claim was barred by the economic loss doctrine; (3) count III

should be dismissed due to Johnson's failure to limit the damages sought to attorney fees based

on defending the underlying action, as previously ordered by the court; (4) count IV should be

dismissed as punitive damages were not available for what was, in essence, a legal malpractice claim; and (5) count V was barred by the one-year statute of limitations for defamation claims.

¶ 38 Since the propriety of the sanction order in the underlying case was in the process of being appealed, the circuit court entered and continued the motion to dismiss until the appeal was decided. As noted, we ultimately affirmed the circuit court's sanction order and subsequent grant of summary judgment in *3Red*, 2019 IL App (1st) 171104-U, finding that the trial court did not abuse its discretion in imposing the sanction. Following our decision, on September 17, 2019, the circuit court granted the Patterson parties' motion to dismiss the amended third-party complaint.

¶ 39 With respect to counts I and II, the circuit court stated that it was "dispens[ing] with the argument in short order," as it had previously dismissed the counts with prejudice based on its finding that Johnson would never be able to establish third-party liability on the underlying complaint due to the discovery sanction that had been entered against him. However, the court did not address the fact that it had previously stricken the "with prejudice" designation in response to Johnson's motion to reconsider, nor did it explain the effect that our intervening decision had on its analysis.

¶ 40 With respect to count III, the court found that, despite its instruction, Johnson had not narrowly tailored his allegations to consist only of the costs associated with being haled into court. Furthermore, the court found that, to prevail in a claim for legal malpractice, Johnson was required to establish that suit would not have been brought against him but for the Patterson parties' actions. However, the court found that each of the allegations in the underlying complaint, including failing to return 3Red's property, providing confidential information to the media, and failing to inform 3Red of government agencies' inquiries,

potentially exposed Johnson to the risk of being haled into court. Accordingly, the court found that Johnson's own conduct prevented him from properly defending the case and dismissed the count.

¶ 41      With respect to count IV, the court found that Johnson had failed to plead sufficient facts to explain how Katz's statements amounted to fraudulent misrepresentations that induced him to continue the attorney-client relationship. The court further found that Johnson had failed to plead facts establishing that these alleged misrepresentations resulted in injury to Johnson. The court noted that the underlying complaint contained allegations of conduct occurring prior to the Patterson parties' involvement, so an earlier termination of the attorney-client relationship would not have prevented Johnson from being haled into court. The court also found that, again, the ultimate liability and failure to defend in the underlying litigation were "wholly of Johnson's own doing," so Johnson was unable to plead injury for any fraud that may have been perpetrated on him by Katz.

¶ 42      Finally, with respect to count V, the court noted that it had previously found that there was a question of fact as to when Johnson knew or should have known of the potentially defamatory statements. However, the court found that in his amended third-party complaint, Johnson alleged that the alleged defamatory statements were made on December 11, 2014, and served as the basis of two articles in the Wall Street Journal dated February 22, 2015, and March 22, 2015. The court further noted that Johnson "intimates the injury to his employability was even brought to his attention on June 16, 2015[,] by a headhunter." The court found that, even taking the latest date alleged, the statute of limitations would have expired on June 16, 2016, making his June 27, 2016, complaint untimely. Accordingly, the trial court dismissed Johnson's amended third-party complaint in its entirety.

¶ 43 Johnson filed a motion to reconsider, which was denied, and this appeal follows.

¶ 44                                    ANALYSIS

¶ 45 On appeal, Johnson claims that the circuit court erred in dismissing his amended third-party complaint, and further contends that the circuit court erred in denying his motion to disqualify the Konicek firm from representing the Patterson parties. We consider each argument in turn.

¶ 46                               *Motion to Dismiss*

¶ 47 First, Johnson claims that the circuit court erred in granting the Patterson parties' motion to dismiss the amended third-party complaint pursuant to section 2-619 of the Code. A motion to dismiss under section 2-619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). When reviewing a motion to dismiss under section 2-619, "a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). Additionally, a cause of action should not be dismissed under section 2-619 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). In our analysis of a section 2-619 dismissal, our standard of review is *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *Morr-Fitz, Inc.*, 231 Ill. 2d at 488. Additionally, even if the circuit court dismissed on an improper ground, a reviewing court may affirm the dismissal if the record supports a proper ground for dismissal. See *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004) (when reviewing a section 2-619

15

dismissal, we can affirm "on any basis present in the record"); *In re Marriage of Gary*, 384 Ill. App. 3d 979, 987 (2008) ("we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground").

¶ 48    Prior to considering the merits of Johnson's arguments, we first address Johnson's claim that the motion to dismiss should have been denied based on the lack of affidavits submitted in support of the motion. The Patterson parties filed a total of six exhibits in support of their motion to dismiss the amended third-party complaint, three related to the underlying case (the complaint, the order imposing discovery sanctions, and the order granting summary judgment) and three related to the third-party complaint (the original third-party complaint, the order dismissing it, and the amended third-party complaint); none of the exhibits included an affidavit. Johnson claims that the lack of such an affidavit is fatal, and that we should reverse on this basis alone. We do not find this argument persuasive.

¶ 49    Section 2-619 provides that if the grounds for the motion do not appear on the face of the pleading, the motion "shall be supported by affidavit." 735 ILCS 5/2-619(a) (West 2016). Our supreme court, however, has made clear that a section 2-619 motion to dismiss may be supported by "certain other evidentiary materials" in addition to affidavits. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 377 (2003); *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997); *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). Furthermore, courts have considered documents submitted in connection with a section 2-619 motion to dismiss to be sufficient where those documents were attached to the motion and there was no dispute as to the existence of the document. See, *e.g.*, *Christmas v. Hughes*, 178 Ill. App. 3d 453, 455 (1989) (considering copy of covenant not to sue attached to motion to dismiss); *White Way Sign & Maintenance Co. v. Montclare Lanes, Inc.*, 42 Ill. App.

16

3d 199, 201 (1976) (considering certified copy of land trust agreement attached to motion to dismiss). More specifically, where the circuit court may take judicial notice of a document, courts have found that such documents may be used to support a section 2-619 motion to dismiss. See *Village of Riverwoods v. BG Limited Partnership*, 276 Ill. App. 3d 720, 724 (1995) (deed provided support for motion to dismiss); *Hays v. Louisiana Dock Co.*, 117 Ill. App. 3d 512, 515-16 (1983) (certified copies of a prior dismissal provided support for motion to dismiss).

¶ 50        In the case at bar, the Patterson parties attached copies of the court orders in the underlying case, which imposed a discovery sanction on Johnson and granted summary judgment in plaintiffs' favor. Johnson acknowledges that the circuit court could properly take judicial notice of such documents. Indeed, since Johnson asserted his third-party claims in the same action as the underlying claims, refusing to permit the court to consider pleadings and orders previously entered in the very case at issue—some of which were entered by the same judge considering the motion to dismiss—would exalt form over substance and potentially lead to absurd outcomes. However, Johnson contends that the Patterson parties improperly asked the circuit court to take judicial notice of their *interpretation* of the orders, rather than the existence of the orders themselves. We find nothing in the record to support such a claim. While the Patterson parties were free to make whatever arguments they wished in their motion to dismiss, nothing shows that they misrepresented the actual language in the orders or otherwise suggested that their interpretation, rather than the language of the orders, was entitled to judicial notice. Consequently, we find that their motion to dismiss was adequately supported by the previously-entered orders and proceed to consider the merits of Johnson's arguments on appeal.

¶ 51                                 Counts I and II

¶ 52        Johnson first claims that the circuit court erred in dismissing counts I and II of the amended third-party complaint, for indemnity and contribution, respectively. As an initial matter, Johnson contends that the circuit court misapprehended the procedural history of the third-party litigation. When the court dismissed the amended third-party complaint, it stated that it was "dispens[ing]" with counts I and II "in short order," as it had previously dismissed the counts with prejudice based on its finding that Johnson would never be able to establish third-party liability on the underlying complaint due to the discovery sanction that had been entered against him. Johnson, however, correctly notes that the circuit court had previously stricken the "with prejudice" designation in response to Johnson's motion to reconsider.

¶ 53        Nevertheless, we cannot find that the circuit court misunderstood the procedural posture of the litigation which was before it. In the order striking the "with prejudice" designation, the court did not set forth its reasoning. The order, however, was entered in the context of ruling on Johnson's motion to reconsider the dismissal of the original third-party complaint. In that motion to reconsider, Johnson argued that dismissing counts I and II based on the discovery sanction was inappropriate or, at a minimum, premature, as he was in the process of appealing that discovery order. Presumably, the court agreed, resulting in the removal of the "with prejudice" language. As noted, we ultimately affirmed the circuit court's decision and upheld the discovery sanction. See *3Red*, 2019 IL App (1st) 171104-U, ¶ 45. At that point, the circuit court's reliance on the discovery order was appropriate and no longer premature, making its original reasoning applicable in later dismissing the amended third-party complaint. We turn, then, to considering the merits of that decision.

¶ 54    Third-party claims, including actions for indemnity and contribution, are premised on derivative liability. *People v. Brockman*, 143 Ill. 2d 351, 365 (1991); *Schulson v. D'Ancona & Pflaum LLC*, 354 Ill. App. 3d 572, 576 (2004). In other words, the liability of a third-party defendant is premised on the liability of the third-party plaintiff to the original plaintiff. *Schulson*, 354 Ill. App. 3d at 576; see also *Brockman*, 143 Ill. 2d at 368. In the case at hand, counts I and II of the amended third-party complaint allege that the Patterson parties are liable under the theories of indemnity and contribution, as it was the actions of the Patterson parties that led to Johnson's liability to plaintiffs in the underlying litigation. Indemnity and contribution are separate and distinct theories of recovery, and are mutually exclusive remedies for allocating a plaintiff's damages. *Kerschner v. Weiss & Co.*, 282 Ill. App. 3d 497, 502 (1996). Contribution contemplates the distribution of loss among joint tortfeasors based on relative fault, while indemnity shifts the entire loss to the party who was actually at fault. *Schulson*, 354 Ill. App. 3d at 576. Consequently, while the circuit court discussed both counts together, we analyze each separately based on the elements required to establish each cause of action.

¶ 55    With respect to his indemnity claim, we note that Johnson's theory of recovery appears to have evolved during the course of the instant litigation. Generally, under an implied indemnity theory, a promise to indemnify will be implied by law where a blameless party is derivatively liable to the plaintiff based on the party's relationship with the one who actually caused the injury. *Schulson*, 354 Ill. App. 3d at 576. In such a case, a third-party plaintiff must allege (1) a pre-tort relationship between the third-party plaintiff and the third-party defendant and (2) a qualitative distinction between the conduct of the third-party plaintiff and the third-party defendant. *Id.* In his original third-party complaint, Johnson expressly set forth these elements

as representing the law applicable to a claim for implied indemnity, and included allegations specifically geared toward those elements. While his amended third-party complaint removed the recitation of the applicable law, it nevertheless continued to include allegations both as to the preexisting relationship between Johnson and the Patterson parties and "a qualitative distinction" between the conduct of Johnson and that of the Patterson parties. However, in *Schulson*, this court held that no "pre-tort relationship" can exist where the underlying lawsuit is solely for breach of contract and the third-party defendant is a stranger to that contract. See *Schulson*, 354 Ill. App. 3d at 577. The circuit court relied on this proposition in dismissing the original third-party complaint, and the Patterson parties raised it in their motion to dismiss the amended third-party complaint.

¶ 56      In response, and in his brief on appeal, Johnson claims that he is not asserting what he terms "implied tort indemnity," as set forth in *Schulson*, but instead is alleging liability through "implied contractual indemnity." Despite the fact that this represents a shift from his earlier theory, we will consider whether dismissal was appropriate under this theory, since a cause of action should not be dismissed under section 2-619 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Feltmeier*, 207 Ill. 2d at 277-78.

¶ 57      The principle behind the theory of implied contractual indemnity is that, where one party's breach of contract causes a second party to breach a separate contract with a third party, the second party may shift its contractual liability to the first party. *Riley Acquisitions, Inc. v. Drexler*, 408 Ill. App. 3d 397, 405 (2011); *Zielinski v. Miller*, 277 Ill. App. 3d 735, 740 (1995). Indemnity in such a case is appropriate, as a party who breaches a contract may be held liable for damages that naturally arise from the breach, so long as such damages were reasonably within the contemplation of the parties as a probable result of the breach. *Zielinski*, 277 Ill.

20

App. 3d at 740. Here, however, we agree with the circuit court that the discovery sanction entered against Johnson foreclosed him from being able to establish that he was entitled to indemnification from the Patterson parties.

¶ 58     As noted, the sanction at issue barred Johnson "from introducing any and all evidence denying his disclosure of confidential information about Plaintiffs and the Confidential Settlement Agreement to the press, in lawsuits, or to any third party unless such disclosure was required by process of law." The practical effect of this sanction was that Johnson was unable to challenge the allegations of the underlying complaint, resulting in the grant of summary judgment against him. The circuit court found that this sequence of events was not reasonably foreseeable to the Patterson parties at the time they withdrew from their representation of Johnson and, therefore, they could not be considered to have caused his injuries through any allegedly improper actions. In response, Johnson claims that the chain of causation leading to his injury had already occurred prior to the entry of the discovery sanction, rendering the imposition of the sanction irrelevant to the issue of indemnity. We do not find this argument persuasive.

¶ 59     A third-party claim for indemnity cannot be determined until the underlying action establishing liability and damages is decided. *Kerschner*, 282 Ill. App. 3d at 506. Thus, Johnson's indemnity claim did not accrue until the entry of judgment in the underlying litigation. See *id.* (a claim for implied indemnity does not accrue until the defendant has a judgment entered against him or until he settles the underlying suit against him). If Johnson had prevailed in the underlying litigation, there would be no indemnification claim available. See *Riley Acquisitions*, 408 Ill. App. 3d at 406 (the defendant was not entitled to indemnification where she prevailed against the plaintiff at trial). However, due to Johnson's

actions during the discovery process, Johnson had virtually no way to prevail, since he was unable to challenge the allegations against him. Thus, regardless of the merits of plaintiffs' action, Johnson would inevitably lose based on the discovery sanction. This would not have been a foreseeable result of any improper conduct on the part of the Patterson parties. Accordingly, we cannot find that Johnson can seek indemnification based on his liability on the underlying complaint.

¶ 60        Johnson contends that such an analysis presupposes that he had a meritorious defense, and suggests that the Patterson parties should have been required to litigate a "case within a case" to establish the existence of such a defense, as in a legal malpractice action. Johnson, however, cites no authority to support such a proposition, and we will not impose such an obligation in the absence of any requirement to do so. Moreover, requiring a plaintiff in a legal malpractice action to litigate a "case within a case" is simply requiring the plaintiff to establish an element of his cause of action, as any plaintiff is required to do. See *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 200 (2006) (a legal malpractice plaintiff must litigate a "case within a case" in order to establish that the plaintiff would have been successful but for the attorney's negligence). Under the rule proposed by Johnson, we instead would be obligating a defendant to affirmatively disprove a plaintiff's allegations. As the third-party plaintiff, Johnson bears the burden of pleading and ultimately proving that the Patterson parties' conduct caused his liability in the underlying action—it is not the Patterson parties' burden to disprove Johnson's claims by speculating as to possible avenues by which Johnson could have prevailed. See *Brockman*, 143 Ill. 2d at 365 (general rules of pleading apply to a third-party complaint, and in order to survive a motion to dismiss, the plaintiff must allege ultimate facts that establish all of the essential elements of the cause of action). Consequently,

we find that the circuit court properly dismissed count I of Johnson's amended third-party complaint.

¶ 61    With respect to Johnson's contribution claim, we similarly find that it was properly dismissed by the circuit court. The Joint Tortfeasor Contribution Act (Contribution Act) requires that all alleged tortfeasors be subject to liability in tort and that their liability arise out of the same injury to person or property. 740 ILCS 100/2(a) (West 2016); *Brockman*, 143 Ill. 2d at 371. There must be some basis for liability with respect to each alleged tortfeasor—if a defendant is not a tortfeasor with respect to the original plaintiff, it cannot be a joint tortfeasor with a codefendant, and may not be held liable to that codefendant for contribution. *Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 529 (1995). The potential for liability is determined at the time of the injury out of which the right to contribution arises, not at the time the action for contribution is brought. *Brockman*, 143 Ill. 2d at 372; *Vroegh*, 165 Ill. 2d at 529. Consequently, even where judgment is not ultimately entered against the tortfeasor due to some procedural bar, immunity, or other affirmative defense, a codefendant may still pursue a contribution claim. *Vroegh*, 165 Ill. 2d at 529-30. Where, however, the plaintiff's claim is not legally sufficient, contribution is not available as there is no point at which the alleged tortfeasor can be said to have been even potentially liable for the injury. *Id.* at 530-31.

¶ 62    In this case, we cannot find that the Patterson parties were subject to liability in tort with respect to the underlying litigation. First, plaintiffs' complaint in the underlying litigation was for breach of contract, not for tortious conduct, and it is well settled that contribution is predicated upon tort, not contract, liability. See *J.M. Krejci Co. v. Saint Francis Hospital of Evanston*, 148 Ill. App. 3d 396, 398 (1986). Furthermore, even if a breach of contract action was subject to the Contribution Act, the Patterson parties were never parties to the settlement

agreement that served as the basis for the underlying litigation and therefore cannot be held liable for any violations of the settlement agreement. See *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 27 (2001) (a breach of contract claim requires establishing the existence of a valid and enforceable contract); *Barnes v. Gibbons*, 2021 IL App (5th) 190415-U, ¶ 23 (a nonparty to a contract cannot be held liable for breach of contract). Finally, even if a breach of contract could result in tort liability under certain circumstances, our supreme court has made clear that there is no recovery in tort for solely economic losses. *J.M. Krejci*, 148 Ill. App. 3d at 398 (citing *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982)). While Johnson contends that the economic loss doctrine does not apply where a party has made intentionally false representations (see *Moorman*, 91 Ill. 2d at 88), we cannot find that the underlying complaint contains allegations against the Patterson parties that would rise to such a level. Accordingly, the circuit court properly dismissed count II of Johnson's amended third-party complaint.

¶ 63                                    Count III

¶ 64        Johnson next claims that the circuit court erred in dismissing count III of his amended third-party complaint, which was for legal malpractice. In an action for legal malpractice the plaintiff must plead and prove that (1) the defendant attorney owed the plaintiff a duty of due care arising from the attorney-client relationship, (2) the defendant breached that duty, and (3) as a proximate result, the plaintiff suffered injury in the form of (4) actual damages. *Judge*, 221 Ill. 2d at 199; *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005). In cases involving litigation, there can be no legal malpractice unless the attorney's negligence resulted in the loss of an underlying cause of action. *Judge*, 221 Ill. 2d at 200. Thus, in order to establish actual damages, the plaintiff must plead and prove that

24

"but for" the attorney's negligence, the client would have been successful in the underlying suit. *Id.* In other words, the plaintiff must litigate a "case within a case." *Id.*

¶ 65    Here, the circuit court found that Johnson was unable to establish that, but for the Patterson parties' conduct, he would not have been haled into court. Instead, the court found that plaintiffs intended to pursue claims relating to Johnson's own actions in failing to return property, providing confidential information to the media, and failing to inform 3Red of governmental inquiries, meaning that Johnson was subject to litigation even absent the Patterson parties' conduct. Johnson claims that this holding represents an "about face" from the circuit court's order dismissing the original third-party complaint, where the court found that Johnson had adequately alleged that, but for the Patterson parties' conduct, he would not have been haled into court. However, we note that the allegations of the original and amended third-party complaints are not identical, so it is entirely reasonable for a court to reach different conclusions based on the version of the complaint before it.

¶ 66    Johnson further contends that his amended third-party complaint establishes that plaintiffs did not intend to file the underlying complaint against him until after the Patterson parties repeatedly attached unredacted copies of the settlement agreement in court filings in the Koch litigation. Johnson points to an allegation in his amended third-party complaint that, after the filing of the Koch complaint, plaintiffs' counsel contacted the Patterson parties to warn that the filing violated the settlement agreement and that plaintiffs would " 'pursue all of [their] legal remedies against your client in the event any other 3Red confidential information is disclosed by your client, whether in the litigation or otherwise.' " Johnson suggests that this communication indicates that, until the Patterson parties' actions in the Koch litigation,

plaintiffs had no intention of filing a lawsuit against him. Even if true, this does not negate Johnson's potential exposure to litigation.

¶ 67     In their complaint, plaintiffs allege four separate violations of the settlement agreement: (1) disclosing confidential information in the Koch litigation, (2) disclosing confidential information to the press, (3) failing to return documents belonging to 3Red, and (4) failing to provide notice regarding any governmental requests for information concerning 3Red. Johnson's amended third-party complaint alleges that the Patterson parties were involved only in two of these alleged breaches—the improper disclosures in the Koch litigation and advising Johnson that he was not required to provide notice of governmental inquiries. Thus, even in the absence of any improper conduct on the part of the Patterson parties, Johnson would have remained exposed to the risk of litigation based on the remaining two alleged violations. The fact that plaintiffs' attorneys sent a warning rather than immediately filing suit when the complaint in the Koch litigation was filed does not mean that plaintiffs were otherwise intending to sleep on their rights. Indeed, it indicates that plaintiffs remained very aware of Johnson's actions as they impacted 3Red. Accordingly, we cannot say that, but for the Patterson parties' conduct, Johnson would not have been haled into court. Therefore, we affirm the circuit court's dismissal of count III of the amended third-party complaint.

¶ 68                                         Counts IV and V

¶ 69     Finally, Johnson claims that the circuit court erred in dismissing counts IV and V of his amended third-party complaint, for fraud and defamation, respectively. Count IV alleged that Katz made false statements of material fact concerning the disclosure of a draft complaint to Advantage, which Johnson ultimately repeated to governmental authorities. Count IV further alleged that these statements were intended to induce Johnson into continuing to retain Katz as

counsel, which he would not have done had he known of the disclosure of the draft complaint. Count IV alleged that, had Johnson terminated Katz after disclosure of the draft complaint, the Patterson parties would not have improperly included confidential information in the filings in the Koch litigation, and Johnson would not have been subject to the underlying litigation. Count IV alleged that Johnson suffered damages including irreparable harm to Johnson's ability to negotiate with Advantage, irreparable harm to his reputation in the trading industry, and the judgment entered against him in the underlying litigation, "which was based, at least in part, upon the disclosure of the Draft Complaint."[4]

¶ 70    Count V alleged that, in December 2014, Katz made three false statements about Johnson to a reporter concerning Johnson's "perilous financial situation," which ultimately appeared in multiple articles written by the reporter. Count V alleged that these false statements caused Johnson irreparable damage to his reputation in the trading industry.

¶ 71    While the circuit court dismissed count IV based on insufficient pleadings and count V based on the statute of limitations, we have no need to address these arguments. As noted, even if the circuit court dismissed on an improper ground, a reviewing court may affirm the dismissal if the record supports a proper ground for dismissal. See *Raintree Homes*, 209 Ill. 2d at 261 (when reviewing a section 2-619 dismissal, we can affirm "on any basis present in the record"); *Gary*, 384 Ill. App. 3d at 987 ("we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground"). Here, it is clear that neither count IV nor count V are appropriate third-party actions, so we affirm the circuit court's dismissal on that basis.

---

[4] We note that neither plaintiffs' underlying complaint nor Johnson's amended third-party complaint allege that any confidential information related to 3Red was contained in the Advantage draft complaint.

¶ 72        A proper third-party action requires derivative liability, meaning that the liability of the third-party defendant is dependent on the liability of the third-party plaintiff to the original plaintiff. *Bellik v. Bank of America*, 373 Ill. App. 3d 1059, 1063 (2007); *Brockman*, 143 Ill. 2d at 368. Our supreme court has made clear that a third-party action cannot be used to maintain an entirely separate and independent claim against a third party, even if it arises out of the same general facts as the main claim. *Brockman*, 143 Ill. 2d at 364-65.

¶ 73        Counts IV and V both constitute separate and independent claims against Katz, not derivative claims, as neither count is dependent on Johnson's liability to plaintiffs. Count IV attempts to build a tenuous connection, alleging that, if Johnson had terminated the Patterson parties earlier, the improper disclosures would not have been made and he would not have been subject to the instant litigation. However, at its core, the question of whether Katz made fraudulent statements about his computer being "hacked" is unrelated to the underlying litigation. Indeed, the primary harm alleged by Johnson is harm to his ability to negotiate with Advantage, as well as any reputational harm from inadvertently spreading false information. Furthermore, count V is wholly separate from the underlying case, and does not even attempt to connect Johnson's liability with the allegations of the defamation claim. Consequently, where neither count IV nor count V constitute proper third-party claims, we affirm the circuit court's dismissal of both counts. See *Brockman*, 143 Ill. 2d at 368-69 (separate and independent claim properly dismissed); *Bellik*, 373 Ill. App. 3d at 1063-64 (same); *Ketcham v. Consolidated Rail Corp.*, 146 Ill. App. 3d 196, 202 (1986) (same).

¶ 74                                    *Motion to Disqualify*

¶ 75        In addition to his claims concerning the dismissal of the amended third-party complaint, as discussed above, Johnson also claims that the circuit court erred in denying his motion to

disqualify the Konicek firm from representing the Patterson parties in the third-party litigation. In his motion to disqualify, Johnson claimed that after his termination from 3Red, he consulted with a number of attorneys in anticipation of filing what would become the Koch litigation, including Konicek, who Johnson met with in March 2014. At that meeting, Johnson "gave a detailed explanation of the facts and circumstances surrounding his termination, including but not limited to the reasons for his termination from 3Red, Oystacher's improper trading practices, and the actions of Koch." A few days later, Konicek sent Johnson a letter agreeing to represent Johnson, but requiring a $15,000 retainer. Johnson asked for a slight modification of the terms of the retainer, with the retainer being due 45 days from the initiation of representation, instead of immediately. After considering the counterproposal, Konicek informed Johnson that the Konicek firm would not be able to represent Johnson. Based on these interactions, Johnson claimed that it would violate the Illinois Rules of Professional Conduct for the Konicek firm to take a position adverse to Johnson in the instant litigation and sought an order disqualifying the firm from representing the Patterson parties with respect to the third-party complaint.

¶ 76    Under rule 1.9 of the Illinois Rules of Professional Conduct, a lawyer who has formerly represented a client in a matter may not thereafter represent a different client in a matter that is the same, or substantially related, if the new client's interests are materially adverse to the interests of the former client without the informed consent of the former client. Ill. R. Prof'l Conduct (2010) R. 1.9 (eff. Jan. 1, 2010). It is axiomatic that only a client may complain of the attorney's subsequent representation of another. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 173 (1997). Additionally, rule 1.9 bars counsel's subsequent representation only where the matters involved in the two representations are the same or substantially related. *Id.* at 177. The party

seeking disqualification bears the burden of proving both (1) the existence of a former attorney-client relationship and (2) that the representations are substantially related. *Id.* at 174, 177.

¶ 77     Attorney disqualification is a drastic measure, as it prohibits a party from representation by counsel of his or her choosing. *Id.* at 178. Accordingly, a court must exercise caution to guard against motions to disqualify being used as tools for harassment. *Id.* The determination of whether counsel should be disqualified is directed to the sound discretion of the circuit court, and its decision will not be reversed absent an abuse of that discretion. *Id.* at 176. An abuse of discretion occurs where no reasonable person would agree with the position adopted by the circuit court. *Id.* Moreover, where the question on appeal involves the resolution of factual issues, the circuit court's findings will not be disturbed unless they are unsupported by the evidence in the record. *Id.*

¶ 78     In this case, the circuit court found that, even assuming *arguendo* that Johnson had an attorney-client relationship with the Konicek firm, the matter for which Johnson sought representation (the Koch litigation) was not substantially related to the matter for which the Patterson parties retained the Konicek firm (the third-party litigation). The circuit court further found that Johnson had waived any conflict by failing to file his motion to disqualify in a timely manner. We agree with the circuit court that the matters are not substantially related and, accordingly, have no need to determine whether Johnson waived any conflict.

¶ 79     In determining whether matters are substantially related, our supreme court has set forth a three-part analysis. See *Schwartz*, 177 Ill. 2d at 180. First, the court must make a factual reconstruction of the scope of the former representation. *Id.* at 178. Next, the court must determine whether it is reasonable to infer that the confidential information allegedly given would have been provided to a lawyer representing a client in those matters. *Id.* Finally, the

court must consider whether the information is relevant to the issues raised in the litigation pending against the former client. *Id.* If the court finds a substantial relationship between the former and subsequent representations, then the court is entitled to assume that client confidences, relevant to the subsequent representations, were revealed during the former representation. *In re Estate of Klehm*, 363 Ill. App. 3d 373, 380-81 (2006). The primary concern under the "substantial relationship" analysis is whether confidential information gained in the first representation may be used to the detriment of the former client in the subsequent representation. *Id.* at 381.

¶ 80     Here, Johnson claims that during his meeting with Konicek, he shared information about the circumstances surrounding his termination, including the reasons for his termination from 3Red, Oystacher's allegedly improper trading practices, and the actions of Koch. He further claims that the allegations in the third-party complaint concern the same matters, since the Koch litigation and, specifically, the improper disclosures during that litigation led directly to the filing of the third-party complaint. We do not find this argument persuasive.

¶ 81     At the time that Johnson consulted with the Konicek firm, as noted, the consultation focused on his relationship with plaintiffs and with Koch, 3Red's counsel at the time of his employment. Johnson was not engaged in litigation with plaintiffs at the time, and had not retained the Patterson parties to represent him; Johnson had not even filed the Koch complaint at that time. Thus, the facts giving rise to the third-party complaint, all arising from the Patterson parties' representation of Johnson in the Koch litigation, were not yet in existence. Additionally, the allegations of the third-party complaint were naturally limited to the time period in which the Patterson parties represented Johnson, which was well after any interaction with the Konicek firm had ended. We are hard-pressed to imagine what information gained

during Johnson's brief consultation with the Konicek firm could be relevant in litigating the issues of whether the Patterson parties were responsible for Johnson's breaches of the settlement agreement. The Patterson parties had no involvement in the drafting of the settlement agreement, nor were they involved in 3Red's business at all.

¶ 82 Johnson claims that he is not required to establish that any confidences were exchanged, as such an exchange is assumed where a substantial relationship is present. See *Klehm*, 363 Ill. App. 3d at 380-81. Johnson, however, overlooks the fact that in determining whether a substantial relationship exists at all, a court must consider whether the confidential information allegedly exchanged is relevant to the subsequent representation. See *Schwartz*, 177 Ill. 2d at 178; *Klehm*, 363 Ill. App. 3d at 380. Here, the circuit court found that there was no substantial relationship, as the facts allegedly shared with the Konicek firm would not be relevant in the third-party litigation against the Patterson parties. We agree, and therefore cannot find that the circuit court abused its discretion in finding that there was no basis for disqualifying the Konicek firm from representing the Patterson parties in the third-party litigation.

¶ 83                                            CONCLUSION

¶ 84 For the reasons set forth above, we affirm the judgment of the circuit court. The court properly dismissed each count of Johnson's amended third-party complaint, and did not abuse its discretion in denying Johnson's motion to disqualify the Konicek firm from representing the Patterson parties in the third-party litigation.

¶ 85 Affirmed.